UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.E.M., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01380-KES-HBK (HC) <br><br> ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION <br><br> Doc. 3 |

Petitioner J.A.E.M. is an asylum-seeker from Colombia who entered the United States in February 2022. After entry, he was briefly detained by immigration officials but then released pending his removal proceedings after the officials determined that he was neither a danger nor a flight risk. Since then, he has lived with his family in Florida and California, become gainfully employed, sought relief in his immigration case, and maintained a clean criminal record. On August 28, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner when he appeared for a scheduled check-in.

On October 16, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

motion for a temporary restraining order, in which he seeks his immediate release from detention and an injunction prohibiting the government from re-detaining him unless it first provides him with a hearing before a neutral adjudicator, Doc. 3.[1]  Respondents filed an opposition on October 22, 2025, Doc. 8, and petitioner filed a reply, Doc. 9.[2]  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

**I.     Background**[3]

Petitioner fled Colombia to pursue asylum in the United States.  Doc. 1 at ¶ 43.  On February 8, 2022, he crossed the southern border and was detained by U.S. immigration officials for one day.  Doc. 1 at ¶ 44; Doc. 8-1, Martinez Decl. at ¶ 7.  After petitioner informed the immigration officials that he had a fear of persecution if he returned to Colombia, they issued him a notice to appear for removal proceedings.  Doc. 1 at ¶ 43; Doc. 8-1, Martinez Decl. at ¶ 8; Doc. 8-2, Ex. 1.  The immigration officials then decided that petitioner would be released on his own recognizance pending those removal proceedings, and they released him with a GPS monitoring device.  Doc. 8-1, Martinez Decl. at ¶ 8; Doc. 8-2, Ex. 3.  The order releasing petitioner on his own recognizance stated that he was being released "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]" and applicable C.F.R. provisions.  Doc. 8-2, Ex. 3.[4]  The regulations that authorize immigration authorities to release a noncitizen on his own

---

[1] Petitioner also filed a motion to proceed under pseudonym, which was granted by separate order.

[2] In their opposition, respondents request that the Court "strike and [] dismiss all unlawfully named officials under § 2241." Doc. 8 at 1, n.1.  Such a "request for court order must be made by motion." *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).  "[A] request for affirmative relief is not proper when raised for the first time in an opposition." *Id.*  As such, respondents' request is denied without prejudice.

[3] Some of the facts in this section come from petitioner's verified petition.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[4] The order of release on recognizance in the record is the document that was re-issued to petitioner on July 19, 2024; his first order of release on recognizance was stolen when his car was

recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

On February 17, 2022, ICE agents removed petitioner's GPS monitoring device and enrolled him in the Intensive Supervision Appearance Program ("ISAP"). Doc. 1 at ¶ 46; Doc. 8-1, Martinez Decl. at ¶ 9. ISAP officers installed an application on his phone for telephonic reporting, and he was required to report via the application once a month, answer video calls from his assigned ISAP officer every two months or so, and report in person on occasion. Doc. 1 at ¶¶ 46, 50–51; *see* Doc. 9-2, Ex. 2.

While in the United States, petitioner initially lived in Florida, but he moved to Santa Rosa, California in December 2023 with his long-term partner, who is also from Colombia. Doc. 1 at ¶¶ 47, 49. There, he spent time with his and his partner's families and attended church. *Id.* ¶ 49. In October 2024, he found employment. *Id.*; *see* Doc. 1-3, Ex. 1. He sought relief in his removal proceedings by filing an application for asylum, and his first hearing in immigration court was set for August 2026. Doc. 1 at ¶ 11.

Petitioner maintained a clean criminal record. Doc. 1 at ¶¶ 57, 60; Doc. 8-2, Ex. 4. Petitioner also indicates that he complied with all reporting requirements, with one caveat. Doc. 1 at ¶¶ 50, 85; Doc. 9-1, Brown Decl. at ¶¶ 3–4, 7. Petitioner missed a check-in on February 23, 2024, Doc. 8-1, Martinez Decl. at ¶ 10, because he was stuck somewhere without cell service, and he called his assigned ISAP supervisor an hour later to explain. Doc. 1 at ¶¶ 50, 85; Doc. 9-1, Brown Decl. at ¶¶ 3. Respondents also assert that petitioner missed a biometric check-in on February 4, 2025, Doc. 8-1, Martinez Decl. at ¶ 12, but petitioner indicates that the app malfunctioned and would not allow him to upload the required image of himself, so he called his

---

broken into. *See* Doc. 8-1, Martinez Decl. at ¶ 11; Doc. 9-1, Brown Decl. at ¶ 5; Doc. 9-4, Ex. 4.

3

1  ISAP supervisor who told him that it was okay and that she would make a note that he had
2  completed the check-in.  Doc. 9-1, Brown Decl. at ¶ 4.  Respondents further assert that petitioner
3  missed an in-person check-in on August 26, 2025, Doc. 8-1, Martinez Decl. at ¶ 13, but petitioner
4  states that he was never instructed to report for an in-person appointment on that date, Doc. 9-1,
5  Brown Decl. at ¶ 7.  Petitioner maintains that he reported for all in-person check ins as required—
6  approximately nine in total.  Doc. 1 at ¶ 51; Doc. 9-1, Brown Decl. at ¶ 7.

7  On August 27, 2025, the day after petitioner purportedly missed an in-person check in,
8  petitioner's assigned ISAP officer informed him that he would need to report in person at the ICE
9  office the next day.  Doc. 9-1, Brown Decl. at ¶ 8.  Petitioner reported in person as instructed, and
10  ICE agents arrested him.  Doc. 1 at ¶ 54; Doc. 8-1 Martinez Decl. at ¶ 14.  ICE transported him to
11  Mesa Verde ICE Processing Center, where he remains detained.  Doc. 1 at ¶ 54; Doc. 8-1
12  Martinez Decl. at ¶ 18.  After he was detained, petitioner's final hearing on his asylum
13  application was advanced to January 8, 2026.  Doc. 8-1 Martinez Decl. at ¶ 16.

14  **II.    Conversion to a Motion for Preliminary Injunction**

15  When the Court set a briefing schedule on the motion, it ordered the parties to state their
16  position on whether the motion for temporary restraining order should be converted to a motion
17  for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 5.
18  Neither party objected to converting the motion to one for a preliminary injunction, and neither
19  party requested a hearing.  *See* Doc. 3 at 2; Doc. 8 at 11.  Given that the standard for issuing a
20  temporary restraining order is the same as for a preliminary injunction, *see Stuhlbarg Int'l Sales*
21  *Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice
22  and opportunity to respond through a written opposition, petitioner's motion is converted to a
23  motion for preliminary injunction.

24  **III.    Legal Standard**

25  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*
26  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–
27  90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to
28  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

4

1   relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."
2   *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.
3   531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of
4   success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*
5   *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*
6   *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious
7   questions going to the merits—a lesser showing than likelihood of success on the merits—then a
8   preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's
9   favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767
10  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.   Discussion**

   **a.   Petitioner is Likely to Succeed on the Merits.**

13      Because civil immigration detention is typically justified only when a noncitizen presents
14  a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001);
15  *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), petitioner argues that the Due
16  Process Clause bars the government from re-detaining him without first providing a hearing
17  where it must prove he is a flight risk or danger.  Doc. 3 at 10–20.  Petitioner's due process claim
18  is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the
19  Due Process Clause, and the second examines the procedures necessary to ensure any deprivation
20  of that protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-
21  01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*
22  *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

   **1.   Petitioner Possesses a Protected Liberty Interest.**

24      A protected liberty interest may arise from a conditional release from physical restraint.
25  *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to
26  arrest and detain an individual, a protected liberty interest under the Due Process Clause may
27  entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process
28  requires pre-deprivation hearing before revocation of preparole)*; Gagnon v. Scarpelli*, 411 U.S.

778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's release on his own recognizance pending his removal proceedings is similar. Among other things, it allowed him to live in the United States with his long-term partner, spend time with his and his partner's families, and become gainfully employed.

Respondents argue that petitioner does not have a liberty interest because 8 U.S.C. § 1225(b) mandates that he be detained. Doc. 8 at 7–12 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). This argument is unpersuasive because the record shows that the government treated petitioner as subject to 8 U.S.C. § 1226(a), not § 1225(b), when it released him in 2024. Doc. 8-2, Ex. 3. The immigration officials who released petitioner issued an order of release on recognizance which stated that petitioner was being released "[i]n accordance with section [1226]."[5] *Id.*

---

[5] Other courts have also found, in similar circumstances, that once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings."

6

Respondents contend that the immigration officials' release of petitioner pursuant to § 1226(a) was based on the government's prior incorrect interpretation of that statute, and the government has since determined that § 1225(b) applies. Doc. 8 at 5. Even if the government were correct that § 1225(b), by its terms, could apply to petitioner, the government previously represented to petitioner, in the order of release on recognizance, that he had been "released on [his] own recognizance [under § 1226(a)] provided that he comply with" certain conditions.[6] Doc. 3-4, Ex. A at 2. This was an "implicit promise" that his release would "be revoked only if he fail[ed] to live up to the [release] conditions," as in *Morrissey*. *Morrissey*, 408 U.S. at 482. When a person is released from custody and lives in society at large for years, reasonably believed that the law required his release, "and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017); *see also Johnson v. Williford*, 682 F.2d 868, 873 & n.3 (9th Cir. 1982) (holding that it would be "inconsistent with fundamental principles of liberty and justice" to re-incarcerate a mistakenly-released prisoner who had readjusted to society and complied with the terms of release). Thus, the argument that "a mistakenly released [person] does not have a legitimate claim of entitlement to freedom [under the Due Process Clause] . . . cannot be squared with established law." *Hurd*, 864 F.3d at 682. Even if § 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to him in the order of release on recognizance that his release was pursuant to § 1226.

Perhaps in recognition of this, respondents point out that the order of release on recognizance states that petitioner was required to comply with certain conditions, *see* Doc. 8-2, Ex. 3, and they allege that petitioner violated the terms of his release by missing three check-ins,

---

*Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

[6] The Court has previously rejected the statutory arguments that respondents make here. *See Guerrero Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *1 (E.D. Cal. Sept. 23, 2025).

7

Doc. 12-1, Jerome Decl. at ¶¶ 10–11. As noted above, petitioner states that he was never made aware of the in-person check-in that respondents say he missed, and that he checked in late the other two times due to technical difficulties and a lack of cell service, respectively, and his ISAP officer confirmed on those occasions that everything was okay. *See* Doc. 9-1, Brown Decl. at ¶¶ 3–4, 7. More importantly, however, the order of release on recognizance states that petitioner's release was "in accordance with section [1226]." Doc. 12-2, Ex. 3. Pursuant to § 1226, petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

Respondents do not argue that petitioner's two late check-ins mean that he is a flight risk or danger to the community.[7] *See* Doc. 8. Rather, respondents assert that ICE arrested petitioner for those technical violations. Doc. 8-1, Martinez Decl. at ¶ 14. Other courts have rejected the argument that "ICE [can] re-detain those released for purely technical violations, like being [] late to a check-in," without regard to whether that technical violation means that one is a flight risk or danger. *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025); *see Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *12–14 (E.D. Cal. Sept. 5, 2025) (finding that petitioner who was redetained after missing a check-in completely and failing to update ICE with a change of address had protected liberty interest which required post-deprivation bond hearing). Under § 1226(a), which was the statute the government cited as the basis for petitioner's release on his own recognizance in February 2022, petitioner was entitled to have a custody redetermination based on whether he was a flight risk or danger. *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Given the time he spent at liberty following the government's determination that he was not a flight risk or danger, as well as the government's implicit promise that any custody redetermination would be based on those

---

[7] Moreover, petitioner was arrested at an in-person check-in two days after he purportedly missed a check-in, *see* Doc. 8-1, Martinez Decl. at ¶ 14, which would undermine an argument that he is a flight risk.

8

same criteria, petitioner has a protected "interest in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (quoting *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025)).  If respondents believe that petitioner's three purportedly missed check-ins mean that he is a flight risk, they can make that argument at any future bond hearing.

Respondents next argue, citing *Thuraissigiam* and *Landon*, that petitioner has no Due Process rights and that his rights are limited to those provided by statute.  Doc. 8 at 8 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)).  This argument is unpersuasive for two reasons.  First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*.  "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)).  "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

Second, respondents' argument misconstrues the nature of the challenge that petitioner brings in this case, which is a challenge to his detention.  *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . .").  However, petitioner challenges his re-detention without a hearing; he does not challenge in this habeas action any determination regarding his

9

1  admissibility.[8] *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023)

2  (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a

3  challenge to detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain]

4  non-citizens is always constrained by the requirements of due process.").

5      "Although the Supreme Court has described Congress's power over the 'policies and rules

6  for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive

7  and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process

8  Clause stands as a significant constraint on the manner in which the political branches may

9  exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990

10 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause

11 protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533

12 U.S. at 693.

13     The Court finds that petitioner has a protected liberty interest in his release. *See*

14 *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

15 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

16 is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

17 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

18 been released have a strong liberty interest). The Court must therefore determine what process is

19 due before the government may terminate his liberty.

20     **2. A Pre-Deprivation Bond Hearing Is Required.**

21     Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*

22 *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are

23 evaluated using the *Mathews v. Eldridge* factors:

---

[8] Respondents note that the conclusion section of petitioner's motion also requests that the Court enjoin his removal from the United States and argue that this Court does not have jurisdiction to bar petitioner's removal. Doc. 8 at 10 (citing Doc. 3 at 21). Petitioner's request to bar his removal is not briefed in his motion, *see* Doc. 3, so the Court will not consider that request in this Order. Additionally, this Order vacates the portion of the Court's prior minute order, Doc. 5, prohibiting the removal or transfer of petitioner.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[9]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for three-and-a-half years, and during that time, lived with his family, worked, and practiced his religion. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. *See* Doc. 8-2, Ex. 5. Although respondents assert that petitioner missed multiple check-ins, *see* Doc. 8-1, Martinez Decl. at ¶¶ 10, 12–13, petitioner asserts that he complied with all release terms and only virtually checked in late once due to lack of cell service and once due to the app malfunctioning, Doc. 1 at

---

[9] Respondents argue that the Supreme Court has never utilized the *Mathews* factors in evaluating a Due Process claim by a noncitizen, Doc. 8 at 7–8 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)), but they analyze petitioner's situation under the *Mathews* factors without proposing an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). The Court does not see a reason to depart from this practice. As the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz*, 53 F.4th at 1206–07.

Case 1:25-cv-01380-KES-HBK     Document 10     Filed 10/27/25     Page 12 of 15

¶ 50; Doc. 9-1, Brown Decl. at ¶¶ 3–4, 7.  Moreover, petitioner showed up in person for a check in two days after the most recent check in that he purportedly missed.  No neutral arbiter has determined whether the facts show that petitioner is a flight risk or danger to the community.  Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.  Numerous district courts have held that these principles extend to the context of immigration detention.  *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2

(N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner *without a bond hearing*. Faced with a choice "between [this minimally costly procedure] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same). Respondents are ordered to release petitioner immediately. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

## V. Conclusion and Order

Accordingly, petitioner's motion for a preliminary injunction, Doc. 3, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The portion of the Court's October 16, 2025 minute order, Doc. 5, prohibiting the removal or transfer of petitioner is vacated.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of the filing of respondents' brief.

Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:    October 27, 2025

_____
UNITED STATES DISTRICT JUDGE